No. 07-11 (L)

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee/Cross-Appellant,*

v.

RICHARD THOMAS STITT,
*Defendant-Appellant/Cross-Appellee.*

On Appeal from the United States District Court
for the Eastern District of Virginia
Norfolk Division

PETITION FOR PANEL REHEARING AND REHEARING EN BANC

COMES NOW the appellant, Richard Thomas Stitt, by and through counsel, pursuant to Rule 35 and Rule 40 of the Federal Rule of Appellate Procedure, and respectfully petitions for rehearing of the decision issued by this Court in this case on December 24, 2008. *United States v. Stitt*, published, __ F.3d __, 2008 WL 5377687 (4th Cir. Dec. 24, 2008) (No.07-11).

INTRODUCTION

Pursuant to FRAP 35 and 40, and Local Rule 40(b), counsel states that rehearing and rehearing *en banc* is necessary because the panel decision involved (1) material factual and legal matters that were overlooked in the decision, and (2) these proceedings involve questions of exceptional importance as they are issues of first impression in the federal courts.

FACTUAL AND PROCEDURAL BACKGROUND

Stitt brought his motion to vacate his convictions and sentences following his jury trial on drug conspiracy, continuing criminal enterprise, murder and related charges. Following the jury trial, Stitt was convicted on several offenses and a sentencing hearing, pursuant to 21 U.S.C. § 848(g), *et seq.*, the jury recommended a sentence of death on each of the three counts of murder during a CCE. This Court affirmed Stitt's conviction and sentences and subsequent to completing all direct appeal remedies, Stitt filed his Motion to Vacate, Set Aside or Correct Sentence, pursuant to 28 U.S.C. § 2255. At the evidentiary hearing in district court on the § 2255 motion, Stitt's trial counsel, Norman Malinski, appeared and testified.[1]

---

[1] Notably, Malinski refused to appear for the first scheduled evidentiary hearing, avoiding service of process. Upon the district judge's admonition that his attendance was required and that Malinski had the choice of appearing voluntarily, or involuntarily, Malinski appeared.

The district court then issued its Memorandum Opinion denying all of Stitt's claims except his claim that he had been denied conflict free counsel in relation to the capital sentencing phase of his trial. The district court based its ruling on MalinskI's failure to seek needed services from the court due to his own personal and financial interests. The district court granted Stitt a new sentencing hearing, but Stitt appealed and the government cross-appealed prior to resentencing.

On March 24, 2006, this Court issued an opinion affirming the district court's grant of sentencing phase relief and denial of guilt phase relief. On May 4, 2006, prior to issuance of its mandate, the Court directed the parties to brief the question of whether it had jurisdiction, since Appellant had not been re-sentenced. On August 16, 2006, the Court issued an opinion finding that it did not have jurisdiction, vacating its earlier opinion on the merits, and remanding the case for re-sentencing.

On February 6, 2007, the district court issued an opinion finding (1) that it had the authority to re-sentence Stitt without convening a jury for that purpose, as long as it did not consider a sentence of death, and (2) that in light of intervening amendments to Title 21 of the United States Code and passage of the Federal Death Penalty Act, it did not have the authority to convene a sentencing jury in this case.

The district court then sentenced Stitt to life imprisonment on the capital charges and imposed the original sentences on the remaining counts. Both Stitt and the government filed notices of appeal. A panel of this Court denied Stitt a certificate

3

of appealability on his claim that he was denied the benefit of counsel learned in the law applicable to capital cases and granted a certificate of appealability on his claim that he was denied conflict-free counsel during the guilt phase of his trial. The government cross-appealed, claiming the district court erroneously sentenced Stitt to life without impaneling a jury and allowing the government to seek the death penalty. The panel of this Court heard oral argument and later issued its opinion of December 24, 2008. In its decision, the panel found that the Savings Statute did save the repealed provision under 21 U.S.C. § 848(g) for impaneling a sentencing jury, thus reversing the district court, and affirmed the district court's denial of Stitt's claim that he was denied conflict-free counsel during the guilt phase of his trial.

<u>REASONS FOR GRANTING THE PETITION</u>

I.    REHEARING *EN BANC* SHOULD BE GRANTED AND THE PANEL'S DECISION REVERSED DENYING STITT A CERTIFICATE OF APPEALABILITY ON HIS CLAIM THAT HE WAS DENIED THE BENEFIT OF "COUNSEL LEARNED IN THE LAW APPLICABLE TO CAPITAL CASES" AS A RESULT OF HIS COUNSEL'S ADMITTED LIES TO THE DISTRICT COURT ABOUT HIS CAPITAL EXPERIENCE.

Despite well supported factual findings that his trial counsel lied to the district court about his qualifications to try a federal capital case, Stitt's Sixth Amendment claim was denied a certificate of appealability. This Court should grant a rehearing

4

*en banc* and reverse this denial of a certificate of appealability on this claim for the reasons that follow.

Norman Malinski, Stitt's trial counsel, was asked by the district court whether he had handled capital cases over the course of his 20-year career. This question was posed the morning trial began. In his response, Malinski corrected the district court, stating that in his "*25-year* career" he had handled "several" capital cases. At the evidentiary hearing on Stitt's § 2255 motion, Malinski admitted that he understood that the district court was referring to cases in which the death penalty was sought when it inquired. Further, he admitted at the hearing that he had never handled a case in which the death penalty had been sought and had not even tried a non-capital murder trial. However, based upon Malinski's representations to the district court, the trial proceeded and Stitt was without counsel "learned in the law applicable to capital cases" – a right secured by 18 U.S.C. § 3005.

This claim was raised by Stitt in the district court, wherein he claimed he was denied his Sixth Amendment right to conflict free counsel. The conflict was clear – Malinski misrepresented his qualifications in order to avoid being eliminated as counsel in the case. Whether Malinski chose this course of action due to monetary concerns, false pride, or other reasons, it matters not because whatever the reason, it was not for Stitt's benefit or in his best interests. The effect of this conflict is also clear. First of all, Malinski was unqualified to try the case, and anyone in that

5

position who did not put his interests above those of his client would have requested the appointment of "learned counsel." That did not happen, however, and Stitt proceeded to trial without the benefit of "learned counsel," required under 18 U.S.C. § 3005.

Thus, the panel's denial of a certificate of appealability overlooked controlling law of this Circuit recognizing the right. *See United States v. Boone*, 245 F.3d 352, 358 (4th Cir. 2001) (finding a defendant charged with a capital crime has an absolute statutory right to the benefits of § 3005).

> II. REHEARING *EN BANC* SHOULD BE GRANTED BECAUSE THE PANEL INCORRECTLY DETERMINED THAT THE SAVINGS STATUTE, 1 U.S.C. § 109, SAVED THE REPEALED SECTIONS OF THE DEATH PENALTY ACT PROVIDING THE MECHANISM BY WHICH A JURY CAN BE CONVENED FOR THE PURPOSE OF SEEKING THE DEATH PENALTY.

This question is one of first impression and should be heard by the entire Court. The panel, in an effort to allow a means for the government to seek the death penalty for Stitt at a resentencing, misapplied the Savings Statute, 1 U.S.C. § 109, expanding its application beyond any authorized application in Supreme Court case law. The panel's decision shows a willingness to re-write the plain meaning of the Savings Statute and invoke it to apply a repealed procedure to a sub-group of individuals – those in Stitt's position – despite Congress's clear intent to not include a similar

6

provision in the Federal Death Penalty Act. The controlling case law has applied the Savings Statute to substance, not procedures, and impaneling a sentencing jury is clearly a procedure, and, as such, is not saved by the Savings Statute. *See Warden, Lewisburg Penitentiary v. Marrero*, 417 U.S. 653, 660 (1974); *United States v. Obermeier*, 186 F.2d 243, 254-55 (2d Cir. 1950).

Stitt was sentenced to death following a jury trial on various counts, including 21 U.S.C. § 848(e) murders. Thus, his sentence of death was imposed after a penalty phase over which the same jury that determined guilt or innocence presided. Pursuant to Stitt's § 2255 motion, the district court vacated the death sentence, finding Stitt had been denied conflict-free counsel during his sentencing phase. Upon resentencing, the district court found it lacked the authority to re-convene a jury for the purpose of sentencing because the procedure for doing so – 21 U.S.C. § 848(g) – had been repealed and the Federal Death Penalty Act ("FDPA") did not provide a mechanism for impaneling a new sentencing jury. Indeed, the panel agreed with the district court, finding that the FDPA did not authorize the impaneling of a new sentencing jury in Stitt's case. The panel then turned to the Savings Statute, finding that the repealed provisions of § 848 (those authorizing the district court to impanel a new sentencing jury) are saved by the Savings Statute because the penalty (death) would not be saved without also saving the mechanism for enforcing it.

7

What the panel ignores is that the "penalty" – the death penalty – is saved by the FDPA and was not repealed or amended out of the statute. In fact, it is alive and well and has remained a penalty for violation of § 848(e) murders. Thus, the panel has no need to apply the Savings Statute in order to retain a "penalty." The cases the panel cites support only the proposition that a particular "sentence" can be saved by § 109, not that a procedural provision for impaneling a jury can be saved.[2]

In its pursuit of applying the penalty of death to a sub-group of people that Congress clearly, and most advertently, did not include in the FDPA, the panel's interpretation of the terms "penalty" and "sentence" was both incorrect and overly broad. Through this erroneous interpretation, the panel applied the Savings Statute to the *procedure* of impaneling a sentencing jury because, without such an

---

[2] The panel cites *United States v. Smith*, 354 F.3d 171, 175 (2d Cir. 2003), for its holding that "sentencing is an integral part of the prosecution of the accused, as that term is used in § 109, and therefore that § 109 saves the sentencing provisions in addition to substantive law." However, the *Smith* case merely held that "§ 109 saves the penalties from the date of [the defendant's] initial offense." That case dealt with the possible penalties (specifically, the length of the sentence) for a violation of supervised release and did not invoke the Savings Statute to maintain sentencing *procedures*. Thus, the Second Circuit's use of the terms "sentencing provisions" was not, as the panel tries to find, a holding that swept sentencing procedures under the umbrella of the Savings Statute.

interpretation, the government has no means of seeking the death penalty against Stitt.[3]

The panel cites *Ring v. Arizona*, 536 U.S. 584, 609 (2002), as it concludes that without the repealed procedures of § 848, the death penalty is extinguished as a matter of constitutional law.  But this is not so; it only extinguishes the death penalty for a sub-group of people who were sentenced prior to § 848's amendment and now require a *re-sentencing*.  Thus, the death penalty is not extinguished, it simply is not available for Stitt or anyone else in his limited set of circumstances.  The panel's own statement that the repealed portions of § 848 are a "constitutionally required condition precedent to imposing § 848(e)'s penalty of a death sentence" illustrates the fallacy of finding that what the panel seeks to save through § 109 is not *procedural.*

> III.   REHEARING EN BANC SHOULD BE GRANTED BECAUSE THE PANEL ERRONEOUSLY FOUND NO CONFLICT OF INTEREST ADVERSELY AFFECTED STITT'S TRIAL COUNSEL DURING THE GUILT PHASE.

Despite the district court's finding that trial counsel was "evasive," "not credible in answering questions about the source of [his] funds, his expenditures and

---

[3]  Indeed, the panel found that because "death is different," "in cases involving capital sentencing, the procedures attendant to that capital sentencing are part of the penalty saved by the general Savings Statute because, without these procedures, that penalty is extinguished as a matter of constitutional law." *United States v. Stitt*, __F.3d__, 2008 WL 5377687 (4th Cir. Dec. 24, 2008).  No case law cited by the panel found such procedures to be part of the penalty.

9

his record-keeping," and despite the panel's conclusion that the financial arrangement between Malinski and Stitt "remains shrouded in mystery to this day," the panel found the district court did not err in accepting Malinski's explanation as to the source of his funding during the guilt phase of Stitt's trial.

The only reason any financial matters remain shrouded in mystery is because Malinski has refused to answer certain questions regarding how he was paid and how much and from whom, failed to produce any records, and failed to rebut Stitt's claim that he did not differientiate money used for expenses and money used to pay his fee. If the financial arrangement between Malinski and Stitt is indeed shrouded in mystery, then it is inconceivable that the district c our t or the panel can conclude that Malinski was not laboring under a conflict of interest during the guilt phase of Stitt's trial.

The conflict claim is simple and wholly supported by the record that is replete with references to the untrustworthiness of Malinski.  The claim is this: Malinski failed to differentiate between money for fees and money for expenses and any money that was needed for services – specifically for investigating for the guilt phase of the trial – was money that Malinski had to decide whether to apply toward his fee or use to hire and investigator.

It matters not whether Malinski had a flat fee arrangement with Stitt because Malinski testified at the evidentiary hearing that he never received his entire fee.

10

Thus, any money that came in from Stitt's family, friends, or whomever, was money that could either go toward Malinski's flat fee or be used for expenses. According to the district court, Malinski was "evasive and not credible in answering questions about the source of the funds, his expenditures, and his record-keeping" and that he did not want to disclose the financial circumstances of his representation to the court. Despite these findings, the district court and panel of this Court found Malinski could be found credible as to some issues, but not others. In the same breath, however, the panel of this Court found that "the financing arrangement between Malinski and Stitt remains shrouded in mystery to this day."

Stitt urges this Court to grant a rehearing *en banc* because all of the findings support the notion that Malinski labored under a financial conflict of interest during the guilt phase, as well as the penalty phase, of the trial. The adverse effect that is required for Stitt to prevail on this claim was clearly outlined to the panel and in Stitt's briefs. In fact, the panel refers to the overwhelming evidence that an investigation in North Carolina would have been a reasonable choice, thus hiring an investigator would have been reasonable. *Stitt*, 2008 WL 5377687, at *4.[4] Malinski did not hire an investigator, however, and did *no* investigation in North Carolina.

---

[4] The panel recognized that Stitt provided evidence that Count One of the Indictment listed 48 overt acts occurring in North Carolina and that two key government witnesses testified extensively and almost exclusively about Stitt's drug operations in North Carolina. *Stitt*, at *4.

To establish this claim, Stitt must show only that an actual conflict of interest existed and it resulted in an adverse effect on counsel's performance. *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). This claim of a conflict of interest during the guilt phase can not be examined in a vacuum. It makes little sense to find on the one hand that Malinski was dishonest, evasive and concerned with his own financial interests during the penalty phase, but that he was self-less, credible and forthright during the guilt phase. It especially makes little sense to come to such contradictory conclusions in a case such as this, where Stitt's life is in question and whether he received the benefit of conflict-free counsel during the trial in which his life was in question. Rehearing *en banc* is therefore appropriate as to all issues raised in this petition and any other issues presented by the parties in their briefs to the court.

12

Respectfully submitted this 14th day of January 2009.

MICHAEL S. NACHMANOFF
Federal Public Defender
for the Eastern District of Virginia


_____s/_____
Amy L. Austin
Va. Bar No. 46579
Amy_Austin@fd.org
Gerald T. Zerkin
Va. Bar No. 16270
Gerald_Zerkin@fd.org
Assistant Federal Public Defenders
Office of the Federal Public Defender
701 East Broad Street, Suite 3600
Richmond, VA 23219
(804) 343-0800
(804) 648-5033 (fax)

CERTIFICATE OF COMPLIANCE

1.    This Petition for Panel Rehearing and Rehearing En Banc has been prepared using WordPerfect 12 software, Times New Roman font, 14 point proportional type size.

2.    EXCLUSIVE of the corporate disclosure statement; table of contents; table of authorities; statement with respect to oral argument; any addendum containing statutes, rules, or regulations, and the certificate of service, this Petition is no longer than 15 pages.

I understand that a material misrepresentation can result in the Court's striking the Petition and imposing sanctions.  If the Court so requests, I will provide a copy of the word or line print-out.

    __January 14, 2009__                ___s/_____

          Date                              Amy L. Austin

                                          Assistant Federal Public Defender

## CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2009, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Darryl J. Mitchell/William D. Muhr
Assistant United States Attorneys
World Trade Center
101 W. Main Street, Suite 8000
Norfolk, Virginia 23510
(757) 441-6331

Richard D. Cooke/David J. Novak
Assistant U.S. Attorneys
Office of the U.S. Attorney
1600 E. Main St., Suite 1800
Richmond, VA 23219

s/
Amy L. Austin
Assistant Federal Public Defender