IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,                )
                                          )
          Plaintiff-Appellee,             )
                                          )        Appeal No. 07-11(L)
     v.                                   )
                                          )
RICHARD THOMAS STITT,                     )
                                          )
          Defendant-Appellant.            )
_____ )

**RESPONSE OF THE UNITED STATES
TO MOTION TO RECALL AND STAY MANDATE**

The United States respectfully opposes Stitt's request to recall and stay the mandate. He satisfies neither the standard for recalling the mandate nor the standard for staying the mandate.

After this Court denied Stitt's petition for rehearing en banc on Tuesday, January 27, 2009, the mandate issued on Wednesday, February 4, 2009. Under FED. R. APP. P. 41(c), "The mandate is effective when issued." Thus, when a party files a motion to stay the mandate after the mandate has issued, the party must satisfy two standards: "First, there must be an adequate showing that the mandate ought to be recalled. Second, there must be an adequate showing that the mandate, if recalled, ought to be stayed." *United States v. Holland*, 1 F.3d 454, 455 (7th Cir. 1993) (Ripple, J., in chambers).

Courts of appeals have recalled their mandates only after a showing of extraordinary circumstances. *Id.* As the Supreme Court has explained, "In light of 'the profound interests in repose' attaching to the mandate of a court of appeals, however, the power can be exercised only in extraordinary circumstances." *Calderon v. Thompson*, 523 U.S. 538, 550 (1998) (quoting 16 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3938, p. 712 (2d ed. 1996)). Thus, even an error by the court of appeals may not justify recalling the mandate. "A mishandled law clerk transition in one judge's chambers, and the failure of another judge to notice the action proposed by the original panel, constitute the slightest bases for setting aside the 'deep rooted policy in favor of the repose of judgments.'" *Id.* at 551 (citation omitted). It follows equally that a lawyer's mistake in filing a motion for a stay after the mandate has issued does not constitute extraordinary circumstances. The Supreme Court emphasized that the "sparing use of the power demonstrates it is one of last resort, to be held in reserve against grave, unforeseen contingencies." *Id.* at 550.

Here, Stitt did file the motion to recall the mandate on the same day that it was issued, rather than after the extended delay at issue in *Calderon*, where significant reliance had been placed on the earlier issuance of the mandate. But again missed deadlines do not generally constitute extraordinary circumstances.

Moreover, even if this Court were to recall the mandate, Stitt cannot meet the test for receiving a stay of the mandate, underscoring that this case does not present exceptional circumstances.

Under FED. R. APP. P. 41(d)(2)(A), a party seeking a stay of the mandate pending a petition for certiorari "must show that the certiorari petition would present a substantial question and that there is good cause for a stay." The Advisory Committee Notes to the Rule explain that "a stay of the mandate is not granted automatically" and that the "Supreme Court has established conditions that must be met before it will stay a mandate." Notes to the 1994 Amendments (citing Robert L. Stern *et al.*, Supreme Court Practice § 17.19 (6th ed. 1986)).

In deciding requests for a stay of the mandate, the Supreme Court has applied a four-part test that tracks the standards for a preliminary injunction. The party seeking the stay must meet the following three threshold requirements.

1.  A reasonable probability that four Justices will vote to grant certiorari;

2.  A fair prospect that a majority of the Supreme Court will reverse the decision below; and

3.  Irreparable harm is likely to result from the denial of the stay.

If those requirements are met, a court then balances the equities.

4.  "[I]n a close case it may be appropriate to 'balance the equities'—to explore the relative harms to applicant and respondent, as well as the interests of the public at large."

*Rostker v. Goldberg*, 448 U.S. 1306, 1308 (1980). *See also United States v. Warner*, 507 F.3d 508, 511 (7th Cir. 2007) (Woods, J., in chambers) (applying *Rostker* test); *Nara v. Frank*, 494 F.3d 1132, 1133 (3d Cir. 2007) (panel opinion applying *Rostker* test); *John Doe v. Miller*, 418 F.3d 950, 951 (8th Cir. 2005) (same).

Stitt does not show a reasonable probability that the Supreme Court will grant certiorari much less that the Supreme Court will reverse.  This Court's opinion that ruled against Stitt relies on the Supreme Court's opinion in *De La Rama S.S. Co. v. United States*, 344 U.S. 386 (1953), and is not in conflict with the decision of any other circuit.  The panel's decision was unanimous and no judge of this Court voted for rehearing en banc.  The traditional criteria for granting certiorari in the Supreme Court's Rule 10 are not met.

Stitt relies on his argument that his petition will present a question of first impression, but as the Eighth Circuit has observed, "That the case presents issues of 'first impression' does not really suggest a probability of further review.  It means that there is no conflict in authority among the courts of appeals that might prompt the Court to grant certiorari." *Miller*, 418 F.3d at 952.

Nor is there irreparable harm.  Stitt will have an opportunity to have the Supreme Court consider his argument under the Savings Statute before any death sentence could be carried out following a new capital sentencing, and the mere fact that he will face a new capital sentencing causes no irreparable harm to him. Stitt did order the murders for which he was convicted; a jury did previously determine that a death sentence was warranted in this case; and he escaped that death sentence due to no misconduct by the government.  Rather, Stitt paid the lawyer that he chose with funds that were likely tainted.

Stitt's failure to allege any irreparable injury from the new sentencing hearing alone suffices to make a stay unjustifiable.  "An applicant's likelihood of success on the merits need not be considered, . . . if the applicant fails to show irreparable injury from the denial of the stay." *Ruckelshaus v. Monsanto Co.*, 463 U.S. 1315, 1317 (1983) (Blackmun, J.).  For example, when a habeas petitioner on death row obtained a remand from the court of appeals for further proceedings, the Supreme Court denied the warden a stay of the mandate while the state's petition for certiorari was pending.  As Justice Stevens explained, the warden "fails . . . to demonstrate either that the hearing will cause any irreparable harm to the State of Ohio or that it will affect this Court's jurisdiction to act on her certiorari petition."

*Bagley v. Byrd*, 534 U.S. 1301, 1302 (2001). *See also Rubin v. United States*, 524 U.S. 1301 (1998) (Rehnquist, C.J.).

Because Stitt does not satisfy the first three criteria for a stay, there is no need for this Court to balance the equities. As *Rostker* states, balancing of the equities "may be appropriate" in a "close case." 448 U.S. at 1308. But even if this Court were to weigh the equities, a stay would not be justified. Very few equities weigh in favor of Stitt personally. As noted above, facing a new capital sentencing will not prevent him from seeking review of this Court's decision, and he cannot claim any serious harm from the new capital sentencing. Moreover, Stitt does benefit from delay in ways that should not weigh in his favor: Further protraction of the proceedings pushes off any death sentence and allows evidence to grow even more stale. Finally, and most important, the public has a strong interest in having its laws enforced.

Both sides will of course need a reasonable time to prepare for a new capital sentencing, roughly a decade after the original trial, but there is no justification for simply placing the case on hold until Stitt's petition for certiorari is resolved.

Respectfully submitted,

Dana J. Boente
Acting United States Attorney

6

By: _____/s/_____
        Richard D. Cooke
        Assistant United States Attorney
        U.S. Attorney's Office
        Eastern District of Virginia
        600 East Main Street, Suite 1800
        Richmond, Virginia 23219
        (804) 819-5471
        richard.cooke@usdoj.gov

CERTIFICATE OF SERVICE

I certify that on February 11, 2009 I filed electronically the foregoing

response with the Clerk of the Court using the CM/ECF system, which will send

notice of the filing to the following registered CM/ECF users:

> Gerald T. Zerkin, Esq.
> Amy L. Austin, Esq.
> Assistant Federal Public Defenders
> 701 East Broad Street, Suite 3600
> Richmond, Virginia 23219
>
> Christopher J. Collins
> 304 East Main Street
> Richmond, Virginia 23219

_____/s/_____

Richard D. Cooke
Assistant United States Attorney
U.S. Attorney's Office
Eastern District of Virginia
600 East Main Street, Suite 1800
Richmond, Virginia 23219
(804) 819-5471
richard.cooke@usdoj.gov
